1
2
3
4
5          UNITED STATES DISTRICT COURT
6          EASTERN DISTRICT OF CALIFORNIA
7
8

| | |
|---|---|
| Britz Fertilizers, Inc., a California corporation,<br><br>          Plaintiff,<br><br>v.<br><br>Bayer Corporation, an Indiana corporation, and Bayer CropScience, a Delaware limited partnership,<br><br>          Defendants. | 1:07-cv-00846-OWW-SMS<br><br>MEMORANDUM DECISION GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DAMAGES FOR NEGLIGENCE, GROSS NEGLIGENCE, AND BREACH OF CONTRACT (Doc. 9) |

9
10
11
12
13
14
15
16                    I.   Introduction.

17        This cases concerns Bayer Corporation's ("Bayer Corp.) and

18   Bayer CropScience, LP's ("Bayer Science") (collectively

19   "Defendants") alleged inadequate defense of Britz Fertilizers,

20   Inc. ("Britz") in a state court lawsuit where a judgment was

21   entered against Britz for over seven million dollars.  Before the

22   court for decision is Defendants' motion to dismiss ("Motion")

23   Britz's First Amended Complaint for Damages for Negligence, Gross

24   Negligence, and Breach of Contract ("FAC").  Defendants move to

25   dismiss Britz's FAC on the following grounds: Britz's FAC is

26   duplicative of a previously filed complaint in this Court, the

27   allegations in the FAC are contrary to documents subject to

28   judicial notice, Britz cannot recover on its negligence and gross

     negligence claims for relief because the claims are for negligent

1  performance of a contract and are not independent of the

2  contract, and Britz cannot recover for breach of contract because

3  the FAC does not allege a breach of the contract's terms.

## II.  Background.

### A.  Procedural Background.

6  Britz filed a Complaint for Damages for Negligence, Gross

7  Negligence, and Negligent Supervision against Defendants on June

8  8, 2007 (hereinafter "*Britz II*").  Ten days later, on June 18,

9  2007, Britz filed its FAC for damages for negligence, gross

10  negligence, and breach of contract.  Britz invokes the court's

11  diversity of citizenship jurisdiction under 28 U.S.C. § 1332.

12  Britz alleges the amount in controversy exceeds $75,000,

13  exclusive of interest and costs.  Britz is a California

14  corporation with its principal place of business located in

15  Fresno, California.  Defendant Bayer Corp. is an Indiana

16  corporation with its principal place of business located in

17  Pittsburgh, Pennsylvania.  Defendant Bayer Science is a Delaware

18  limited partnership with its principal place of business in

19  Research Triangle Park, North Carolina.  The partners of Bayer

20  Science are entities that are citizens of Delaware, Indiana, and

21  Germany.  Britz alleges Bayer Corp. controlled Bayer Science and

22  was responsible for its actions or inaction.[1]  FAC ¶ 7.

23  On July 17, 2007, Defendants filed this Motion.  Britz

24  opposes Defendants' Motion.  On July 25, 2007, District Judge

25  Anthony W. Ishii signed an order reassigning this case (*Britz II*)

26

27  [1] In the FAC, Britz jointly refers to Bayer Corp. and Bayer
Science as "Defendant" or as "Bayer."  The terms are also used

28  interchangeably in this Order.

2

to this court because of a currently pending lower-numbered related case captioned *Britz Fertilizers, Inc., v. Bayer Corporation, et al.*, 1:06-cv-00287-OWW-SMS (hereinafter *"Britz I"*).

      B.   <u>Factual Background</u>.

         1.   *<u>Britz II</u>*.

     Defendants manufacture agricultural chemical products.  FAC ¶ 10.  Britz was a distributor of Defendants' agricultural products in central California.  FAC ¶ 11.  As a distributor, Britz was one of Defendants' largest accounts generating between $20 and $25 million in annual sales for Defendants.  FAC ¶ 11.  One of the products Defendants manufactured was an agricultural chemical product known as "Ethrel."  FAC ¶ 12.

     In 2002, Britz purchased Defendants' Ethrel.  FAC ¶ 13.  Britz sold the Defendants' Ethrel to an individual named Ahmad Skouti ("Skouti"), who was a grape grower in Fresno and Madera Counties.  FAC ¶ 13.  Britz alleges that in July 2002, Skouti applied Defendants' Ethrel to certain vineyards he owned in Fresno and Madera Counties, and to a vineyard in Fresno County that he leased from Walter Johnsen ("Johnsen").  FAC ¶ 14.  Skouti's vineyards sustained damage after the application of Defendants' Ethrel to the vineyards; Britz alleges this damage was not through its fault or negligence.  FAC ¶ 15.

     In September 2002, after becoming aware of the damage to Skouti's vineyards, Britz promptly notified Defendants of the damage.  FAC ¶ 16.  On September 10, 2002, William Ferguson ("Ferguson"), Defendants' vice president and assistant general counsel, acting as an agent or representative of the Defendants,

3

1  represented to Britz, in writing, that in the event a claim arose

2  out of the application of Defendants' Ethrel to Skouti's

3  vineyards "it would be Bayer's position that it would defend and

4  indemnify [Plaintiff against] any claim related to [Defendant's]

5  product in a situation where the [D]istributor acted as a purely

6  'pass through' entity." FAC ¶¶ 17-18.  Ferguson had been

7  managing product liability litigation for Bayer since

8  approximately 1988 and had significant experience in this area.

9  FAC ¶ 18.

10      On December 18, 2002, Skouti and Johnsen filed a lawsuit

11  against Britz in Fresno County Superior Court for damages

12  sustained as a result of the application of Defendant's Ethrel to

13  Skouti's vineyards ("Skouti Lawsuit").  FAC ¶ 19.  Britz's

14  insurance carrier retained Theodore Hoppe ("Hoppe") to represent

15  Britz in the Skouti Lawsuit.  FAC ¶ 20.  On March 7, 2003, Britz

16  filed a cross-complaint against Defendants for declaratory relief

17  and indemnification in the Skouti Lawsuit.  FAC ¶ 22.

18      On January 16, 2003, Britz requested that Defendants defend

19  and indemnify Britz in the Skouti Lawsuit.  FAC ¶ 21.  On May 14,

20  2003, James Moore ("Moore") of the law firm Baker & Hostetler

21  LLP, as the agent or representative and on behalf of Defendants,

22  agreed in writing that Defendants would defend Britz in

23  connection with the Skouti Lawsuit.  FAC ¶ 23.  Moore's May 14,

24  2003, correspondence is addressed to Hoppe and reads:

25          Re:  No. 02-CECG04540; *Ahmad Skouti and Walter
                  Johnsen v. Britz Fertilizers, Inc., et
26                al*; In the Superior Court of California,
                  County of Fresno.
27
        Dear Mr. Hoppe:
28

**4**

1  

2  

        This is in response to your letter dated January 16, 2003, concerning the above-referenced matter.  Bayer has asked me to respond to the letter.

3  

        You have provided to Bayer CropScience ("Bayer") a copy of a complaint that does not mention Bayer or any Bayer product.  The complaint alleges, among other things, that Britz Fertilizers, Inc. ("Britz") acted as a consultant for the plaintiff and performed negligently in this capacity.  The information provided to Bayer indicates that Bayer has no duty to defend or indemnify Britz Fertilizers in this case.

4  

5  

6  

7  

        However, because of Bayer's relationship with Britz, Bayer agrees to defend Britz Fertilizers, Inc. at this time.  Bayer will not pay past attorneys fees or costs in this case.  Bayer will retain Jim Rushford of Rushford & Bonotto in Sacramento, to defend this matter with you. If there is any evidence in this case of negligence or fault on the part of Britz (whether credible or not), Bayer may at its option withdraw from the defense of this case.  In the event that Bayer withdraws from the case, Britz agrees to waive any conflict and allow attorneys retained by Bayer in this manner to continue to represent Bayer if Bayer is included as a party.

8  

9  

10  

11  

12  

13  

14  

        Britz agrees that it will cooperate fully with Bayer in connection with the defense of this case.  Both Bayer and Britz reserve the issue of indemnity until a later date.

15  

16  

        Please sign below to indicate acceptance of Britz Fertilizers, Inc. to this letter agreement.

17  

18  

        Please let me know if you have any questions.

19  

                        Very truly yours,

20  

                        [Signature of James L. Moore]

21  

                        James L. Moore
                        Of Baker & Hostetler

22  

23  FAC, Exhibit A.  Britz alleges Moore was employed and acting as

24  Defendants' outside legal counsel for all litigation claims in

25  connection with Defendants' agricultural chemicals.  FAC ¶ 24.

26  Britz further alleges Moore had been Defendants' outside counsel

27  since 1993 and had significant experience representing Defendants

28  in crop damage lawsuits.  FAC ¶ 24.  Moore's primary

                                5

1   responsibilities included securing, employing, supervising, and
2   managing local trial counsel retained to represent and defend
3   Defendants in litigation involving Defendants' products.  FAC ¶
4   24.

5       Britz believed that Defendants agreed to Defend Britz in the
6   Skouti lawsuit because Britz was one of Defendants' largest
7   accounts, and Defendants did not want to lose or damage the
8   business relationship with Britz.  FAC ¶ 25.  Defendants agreed
9   to and did pay for Hoppe's subsequent legal services in the
10  Skouti Lawsuit.  FAC ¶ 26.  Defendants also retained and paid for
11  the legal services of James Rushford ("Rushford") of Rushford &
12  Bonotto LLP to act as co-counsel to defend Britz in the Skouti
13  Lawsuit.  FAC ¶ 26.  On June 3, 2003, Britz dismissed its cross-
14  complaint against the Defendants in reliance on Defendants'
15  agreement to defend Britz in the Skouti Lawsuit.  FAC ¶ 27.  On
16  June 18, 2003, Rushford became co-counsel of record for Britz.
17  FAC ¶ 26.  Beginning June 18, 2003, and continuing through
18  November 22, 2004, Rushford represented Britz in the Skouti
19  Lawsuit.  FAC ¶ 28.

20      Britz alleges that Rushford, while representing Britz in the
21  Skouti Lawsuit, was acting as counsel for Defendants without
22  Britz's knowledge or consent.  FAC ¶ 29.  While acting as co-
23  counsel to Britz, Rushford continuously reported the status of
24  the litigation and the substance of privileged attorney-client or
25  work-product information between Hoppe and himself to Moore and
26  Ferguson.  FAC ¶ 30.  Moore reported his communications with
27  Rushford to Ferguson.  FAC ¶ 31.  Ferguson, in his capacity as
28  Defendants' vice president and assistant general counsel, was

1  responsible for the overall management of Britz's defense in the
2  Skouti lawsuit.  FAC ¶ 31.

3      While Rushford was representing Britz, he concluded Hoppe
4  was not properly defending Britz in the Skouti Lawsuit and
5  repeatedly communicated this information to Moore or Ferguson, or
6  both.  FAC ¶ 32.  Rushford failed to take any measures to correct
7  or mitigate Hoppe's acts or omissions to ensure Britz received a
8  proper defense.  FAC ¶ 33.  Rushford also failed to communicate
9  to Britz the propriety of Hoppe's representation of Britz.  FAC ¶
10 33.  Britz believed in good faith that it was being properly
11 defended in the Skouti Lawsuit under the supervision of Bayer.
12 FAC ¶ 33.  Although Defendants, Moore, and Ferguson were aware of
13 Rushford's conclusion that Hoppe was not competently defending
14 Britz, they failed to take any measures to ensure Britz received
15 a proper defense.  FAC ¶ 34.  Defendants, Moore, and Ferguson
16 also failed to communicate to Britz any of Rushford's conclusions
17 regarding the inadequacy of Britz's defense in the Skouti
18 Lawsuit, so Britz could have taken corrective measures.  FAC ¶
19 34.

20     On November 22, 2004, Rushford withdrew as counsel for Britz
21 in the Skouti Lawsuit without Britz's consent.  FAC ¶ 35.  Britz
22 alleges Rushford represented Defendants regarding Skouti's claims
23 after he withdrew as Britz's counsel and without Britz's consent.
24 FAC ¶ 35.

25     Based on these facts, Britz asserts three claims for relief.
26 The first claim for relief is for negligence.  Britz asserts
27 Defendants agreed to defend Britz in the Skouti Lawsuit, and
28 therefore undertook a duty to exercise reasonable care in

7

1   managing Britz's defense.  According to Britz, Defendants

2   breached their duty to exercise care in managing Britz's defense

3   in the Skouti Lawsuit by failing to take measures to ensure Britz

4   received a proper defense.   Britz also asserts Defendants failed

5   to properly manage Britz's defense and to inform it of Rushford's

6   dual agency (and conflict), which resulted in a judgment in the

7   Skouti Lawsuit against Britz in the amount of $7,596,247 plus

8   costs, which is the legal cause of Britz's injuries.  Britz's

9   second claim for relief is for gross negligence.  In its claim

10  for gross negligence, Britz asserts that Defendants failed to act

11  with any modicum of diligence or care, and Defendants' actions

12  constituted a wanton and reckless disregard of its obligations to

13  Britz.  Britz also seeks exemplary and punitive damages for its

14  gross negligence claim.  Britz's third and final claim for relief

15  is for breach of contract.  Britz asserts Defendants' express

16  agreement to defend Britz in the Skouti Lawsuit contained a

17  necessary and implied condition to adequately defend Britz.

18  According to Britz, Defendants breached their agreement to

19  adequately defend Britz by failing to take measures to ensure

20  Britz received an adequate defense, and by failing to inform

21  Britz of the facts or circumstances indicating Britz was not

22  being adequately defended as Rushford had indicated to Moore and

23  Ferguson.  Throughout the Skouti Lawsuit, Britz relied on

24  Defendants' agreement to adequately defend Britz.  Britz alleges

25  it did not become aware of Defendants' breach of its obligations

26  until after June 10, 2005, when the $7,596,247 judgment was

27  entered against Britz.

28

1        **2.   *Britz I*.**

2        The following is an overview of the allegations in *Britz I*

3  that are not otherwise set forth in *Britz II*.  In January 2002,

4  Britz and Bayer Corp. entered into a distributorship agreement

5  ("Distribution Agreement") that entitled Britz to distribute

6  itemized formulations of Bayer Products.  *Britz I* Compl. ¶ 7.

7  Britz agreed to use its best efforts in selling Bayer Products.

8  *Britz I* Compl. ¶ 9.  One of the terms and conditions in the

9  Distribution Agreement required Britz to promptly investigate and

10 report to Bayer Corp. all customer complaints concerning the use

11 and application of Bayer Products and to cooperate with Bayer

12 Corp. in handling claims.  *Britz I* Compl. ¶ 10.  An additional

13 term and condition in the Distribution Agreement required Bayer

14 Corp. to indemnify Britz against all claims for property damage

15 or personal injury to third parties, whether arising in warranty,

16 negligence, or otherwise, with certain exceptions, caused by

17 goods supplied to Britz by Bayer Corp. under the Distribution

18 Agreement.  *Britz I* Compl. ¶ 11.

19       Britz seeks the following relief in *Britz I*: damages in the

20 amount of $7,596,247, plus costs and interest, under express

21 indemnity, implied contractual indemnity, and implied equitable

22 indemnity theories; an unspecified amount in damages, including

23 punitive damages, for fraud and false promise; unspecified

24 damages for negligent misrepresentation; and declaratory relief.

25 Britz also seeks attorney's fees.

26       Britz filed the complaint that initiated *Britz I* on March

27 14, 2006.  On August 30, 2006, a scheduling conference order was

28 entered setting the discovery cutoff date as June 29, 2007, a

settlement conference date on July 12, 2007, the non-dispositive motions deadline on July 16, 2007, a dispositive motions deadline on July 30, 2007, a pre-trial conference date on September 24, 2007, and the trial date for October 30, 2007.[2]  On May 24, 2007, and upon the parties' request, Magistrate Judge Snyder extended the discovery cutoff date to July 30, 2007.  On June 7, 2007, and upon the parties' request, the pre-trial motions schedule was modified requiring non-dispositive motions to be filed by August 12, 2007, and all dispositive motions to be filed by August 27, 2007.  On July 10, 2007, the parties filed a joint request for a new scheduling order.[3]  By minute order dated August 1, 2007, the following dates were set.  The discovery cutoff date is December 21, 2007.  Non-dispositive motions are due January 4, 2008.  Dispositive motions are due January 14, 2008.  The final pretrial conference is set for March 17, 2008.  A jury trial is set to begin on May 6, 2008.

### III.  Legal Standard.

Federal Rule of Civil Procedure 12(b)(6) provides that a motion to dismiss may be made if the plaintiff fails "to state a claim upon which relief can be granted."  The question before the court is not whether the plaintiff will ultimately prevail, rather, it is whether the plaintiff could prove any set of facts in support of his claim that would entitle him to relief.  *See*

---

[2] The parties did not anticipate filing any amendments to the pleadings as of August 30, 2006.  (Doc. 12) Sched. Conf. Order at p. 3, lns. 25-26.

[3] The parties filed this request prior to Defendants' filing of this Motion.

1   *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).  "A complaint

2   should not be dismissed unless it appears beyond doubt that

3   plaintiff can prove no set of facts in support of his claim which

4   would entitle him to relief."  *Van Buskirk v. CNN, Inc.*, 284 F.3d

5   977, 980 (9th Cir. 2002).

6        In deciding whether to grant a motion to dismiss, the court

7   "accept[s] all factual allegations of the complaint as true and

8   draw[s] all reasonable inferences" in the light most favorable to

9   the nonmoving party.  *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th

10  Cir. 1999); *see also Rodriguez v. Panayiotou*, 314 F.3d 979, 983

11  (9th Cir. 2002).  A court is not "required to accept as true

12  allegations that are merely conclusory, unwarranted deductions of

13  fact, or unreasonable inferences."  *Sprewell v. Golden State

14  Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

15                  IV. <u>Defendants' Request for Judicial Notice</u>.

16       Defendants request the court to take judicial notice of

17  several documents that were filed in *Britz I* under Federal Rule

18  of Evidence ("FRE") 201.  These documents are attached to the

19  declaration of Defendants' counsel in support of Defendants'

20  Motion and include copies of the Joint Scheduling Conference

21  Statement, Britz's Opposition to Defendants' Motion to Compel

22  Answers Posed at Deposition, the Declaration of Robert Glassman

23  (Britz's chief financial officer) in Opposition to Defendants'

24  Motion to Compel Answers Posed at Deposition, the Declaration of

25  Theodore W. Hoppe in Opposition to Defendants' Motion to Compel

26  Answers Posed at Deposition, and the Declaration of Roger Schrimp

27  (Britz's current counsel) in Opposition to Defendants' Motion to

28  Compel Answers Posed at Deposition.

1    Defendants also request the court to take judicial notice of

2  a letter from Mr. Hoppe to Mr. Moore dated May 27, 2003,

3  indicating Britz agrees to Defendants' proposal in Moore's May

4  14, 2003, letter.  Britz does not object to Defendants' request

5  for judicial notice.

6    "A judicially noticed fact must be one not subject to

7  reasonable dispute in that it is either (1) generally known

8  within the territorial jurisdiction of the trial court or

9  (2) capable of accurate and ready determination by resort to

10  sources whose accuracy cannot reasonably be questioned."  Fed. R.

11  Evid. 201(b).  "A court shall take judicial notice if requested

12  by a party and supplied with the necessary information."  Fed. R.

13  Evid. 201(d).  Judicially noticed facts often consist of matters

14  of public record, such as prior court proceedings, *see, e.g.,*

15  *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1198 (9th Cir. 1988).

16    In reviewing a Rule 12(b)(6) motion, a court must accept as

17  true all material allegations in the complaint, as well as

18  reasonable inferences to be drawn from them.  *Pareto v. Federal*

19  *Deposit Ins. Corp.*, 139 F.3d 696, 699 (9th Cir. 1998).  A court

20  may consider facts subject to judicial notice outside the

21  pleadings in a motion to dismiss.  *Mullis v. United States Bankr.*

22  *Court for the Dist. of Nevada*, 828 F.2d 1385 (9th Cir. 1987)

23  (citing *Mack v. South Bay Beer Distribs., Inc.*, 798 F.2d 1279,

24  1282 (9th Cir. 1986)).

25    Each document that Defendants' request the court to take

26  judicial notice of is a part of the court record in *Britz I*,

27  except for the May 27, 2003, Hoppe Letter.  These documents are

28  the proper subject of judicial notice under FRE 201(b) and

*Emrich*, 846 F.2d at 1198.  The Hoppe Letter, which is Britz's acceptance of Defendants' offer to pay Britz's attorney's fees and to provide Rushford as counsel in the Skouti Lawsuit, is central to Britz's claims for breach of contract, negligence, and gross negligence.  *See Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) (holding that "a district court ruling on a motion to dismiss may consider a document the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies.").  The Hoppe Letter is also the proper subject of judicial notice under FRE 201(b) as its existence is not reasonably subject to dispute.

Defendants' request for judicial notice of the documents attached to the declaration of T. Mark Smith is GRANTED.

## V.  Discussion.

### A.   Whether Britz's FAC States a Claim for Relief for Negligence and Gross Negligence.

Defendants contend a party may not recover in tort for breach of a contractual obligation (tortious breach of contract).  Defendants maintain each of the causes of action in *Britz II* are based on the May 14, 2003, letter from Moore to Hoppe, a contract between the parties.  Defendants argue Britz does not allege Defendants have any duties independent of the May 14, 2003, letter, and Britz has only pleaded negligent performance of a contract.

Britz contends its negligence and gross negligence claims arise from Defendants' duty to exercise reasonable care in furnishing a defense to Britz, including a duty to inform Britz of material facts or circumstances which became known to

13

1  Defendants during its defense.  Britz also contends that
2  Defendants' agreement to defend Britz crated a special
3  relationship between Britz and Defendants that is analogous to
4  the relationship between an insurer and an insured.

5       "The distinction between tort and contract is well-grounded
6  in common law, and divergent objectives underlie the remedies
7  created in the two areas." *Erlich v. Menezes*, 21 Cal. 4th 543,
8  550 (1999).  "Whereas contract actions are created to enforce the
9  intentions of the parties to the agreement, tort law is primarily
10 designed to vindicate social policy." *Id.* at 550-51.  "While the
11 purposes behind contract and tort law are distinct, the boundary
12 line between them is not[,] and the distinction between the
13 remedies for each is not found ready made." *Id.* (citations and
14 internal quotations omitted).  The California Supreme Court has
15 commented that the distinction "arises from the nebulous and
16 troublesome margin between tort and contract law." *Aas v.*
17 *Superior Court*, 24 Cal. 4th 627, 635 (2000).

18      A trio of California Supreme Court cases address whether
19 Britz can state a claim against Defendants for negligence and
20 gross negligence arising out of the May 14, 2003, letter. *See,*
21 *e.g., Aas v. Superior Court*, 24 Cal. 4th 627 (2000); *Erlich v.*
22 *Menezes*, 21 Cal. 4th 543 (1999); and *Freeman & Mills, Inc. v.*
23 *Belcher Oil Co.*, 11 Cal. 4th 85 (1995).  "A person may not
24 ordinarily recover in tort for the breach of duties that merely
25 restate contractual obligations." *Aas*, 24 Cal. at 643.
26 "[C]ourts will generally enforce the breach of a contractual
27 promise through contract law, except when the actions that
28 constitute the breach violate a social policy that merits the

**14**

1   imposition of tort remedies." *Id.*   (citing *Menezes*, 21 Cal. 4th

2   at 552 (1999)).

3        In *Menezes*, the California Supreme Court was faced with the

4   issue of whether a homeowner could recover emotional distress

5   damages against a homebuilder for shoddy construction work.   The

6   facts of *Menezes* are straight forward.   The homeowners contracted

7   with the homebuilder, a licensed general contractor, to build a

8   "dreamhouse" on their ocean-view lot.   *Menezes*, 21 Cal. 4th at

9   548. The rains came and the nightmares began shortly after the

10  homeowners moved into their new home.   *Id.*

> 11  The house leaked from every conceivable location.  Walls
> 12  were saturated in an upstairs bedroom, two bedrooms
>     downstairs, and the pool room.   Nearly every window in
>     the house leaked.    The living room floor filled with
> 13  three inches of standing water.   In several locations
>     water poured in . . . streams from the ceilings and
> 14  walls.   The ceiling in the garage became so saturated .
>     . . the plaster liquified and fell in chunks to the
> 15  floor.

16  *Id.* (alterations in original omitted).   The homebuilder's

17  attempts to stop the leaks proved ineffectual.   *Id.*   The

18  homeowners eventually had another general contractor and

19  structural engineer inspect their home.   *Id.*   This inspection

20  revealed substantial defects in the workmanship of the house.   In

21  addition to confirming defects in the roof, windows, and

22  waterproofing, the inspection revealed none of the load-bearing

23  walls were properly installed, turrets on the roof were

24  inadequately connected to the roof beams and had begun to

25  collapse, other parts of the roof framing were improperly

26  constructed, and three decks were in danger of catastrophic

27  collapse.   *Id.* at 549.   The homeowners sought recovery against

28  the homebuilder on several theories including breach of contract,

1  fraud, negligent misrepresentation, and negligent construction.
2  *Id.*

3      At trial, the homeowners testified that they suffered
4  emotional distress as a result of the defective condition of the
5  house and the homebuilder's invasive and ineffectual repairs.
6  *Menezes*, 21 Cal. 4th at 549.  One of the homeowners felt
7  "absolutely sick" and had to be removed by an ambulance after
8  learning of the full extent of the structural problems.  *Id.*  The
9  jury found the homebuilder breached his contract with the
10 homeowners by negligently constructing their home and awarded the
11 homeowners $406,700 as the cost of repairs.  *Id.*  Each homeowner
12 was awarded $50,000 for emotional distress.  *Id.*

13     The court of appeal affirmed the judgment, including the
14 emotional distress awards, noting that the breach of a
15 contractual duty may support an action in tort.  *Id.* at 550.  The
16 supreme court reversed holding that emotional distress damages
17 are not available in breach of contract and negligent
18 construction cases, disagreeing with the court of appeals'
19 reliance on the proposition that a contractual obligation may
20 create a legal duty and the breach of that duty may support an
21 action in tort.  *Id.*  Recognizing this proposition is true, the
22 court stated, "however, conduct amounting to a breach of contract
23 only becomes tortious when it also violates a duty independent of
24 the contract arising from principles of tort law."  *Id.*  The
25 supreme court reviewed several cases and concluded that in each
26 case "the duty that gives rise to tort liability is either
27 completely independent of the contract or arises from conduct
28 that is both intentional and intended to harm."  *Id.*

1    *Aas* is also a construction defect case.  In *Aas*, the

2   homeowners alleged that their dwellings suffered a variety of

3   construction defects affecting virtually all components and

4   aspects of construction.  *Aas*, 24 Cal. 4th at 633.  Based on

5   these defects, the plaintiffs asserted causes of action for

6   negligence, strict liability, breach of implied warranty, breach

7   of express warranty, and breach of contract.  *Id.*  The plaintiffs

8   sought damages for the cost of repairing the alleged defects and

9   for damages representing the diminution in value of their

10  residences.  *Id.*  Before the trial began, the defendants moved

11  for orders in limine seeking to exclude evidence of the alleged

12  construction defects that had not caused property damage.  *Id.*

13  The trial court granted the defendants' motions as to the

14  homeowners' tort claims only.  *Id.* at 633-34.  The homeowners

15  sought a writ of mandate, which the court of appeal denied, and

16  the California Supreme Court granted review of that decision.

17  *Id.* at 634.

18       The question in *Aas* was whether the homeowners could

19  "recover in negligence from the entities that built their homes a

20  money judgment representing the cost to repair, or the diminished

21  value attributable to, construction defects that have not caused

22  property damage."  *Aas*, 24 Cal. 4th at 635.  The *Aas* homeowners

23  relied on *North Am. Chem. Co. v. Superior Court*, 59 Cal. App. 4th

24  764, 777 (1997) for the proposition that "a contract to perform

25  services gives rise to a duty of care which requires that such

26  services be performed in a competent and reasonable manner[,] and

27  that a negligent failure to do so may be both a breach of

28  contract and a tort."  *Aas*, 24 Cal. 4th at 643.  The homeowners

17

1   argued the defendant's "negligent breach of contractual duties

2   owed directly to [the homeowners] to deliver homes in compliance

3   with the applicable building codes is a tort, for which [they]

4   may recover the amount which will compensate for all the

5   detriment proximately caused thereby." *Id.*  The supreme court

6   found the homeowners' argument unpersuasive in light of *Menezes*

7   and *Belcher Oil*.

8        A person may not ordinarily recover in tort for the
         breach of duties that merely restate contractual
9        obligations.  Instead, courts will generally enforce the
         breach of a contractual promise through contract law,
10       except when the actions that constitute the breach
         violate a social policy that merits the imposition of
11       tort remedies.

12  *Id.* (internal quotations and alterations in original omitted).

13  The supreme court had "recently rejected the argument that the

14  negligent performance of a construction contract, without more,

15  justifies an award of tort damages" in *Menezes*.  *Id.*  The court

16  emphasized its *Menezes* finding where it "reiterated that conduct

17  amounting to a breach of contract becomes tortious when it also

18  violates a duty independent of the contract arising from

19  principles of tort law."  *Id.*  The supreme court affirmed the

20  court of appeals' denial of the homeowners' petition for writ of

21  mandate to require admission of evidence of construction defects

22  that did not cause damage.  *Id.* at 653.

23       Britz argues that its breach of contract claim arises out of

24  Defendants' breach of its promise to defend Britz in the Skouti

25  lawsuit.  The negligence and gross negligence claims, Britz

26  argues, arise from a duty to exercise reasonable care in

27  providing a competent defense with competent counsel and a duty

28  to inform Britz of material facts or circumstances Defendants

1  became aware of in the course of defending Britz.

2      Britz's arguments ignore the California Supreme Court's
3  opinions in *Menezes* and *Aas*.  Like the homeowners in *Aas*, Britz
4  relies on the language in the court of appeals' decision in *North*
5  *American Chemical Company*, a case pre-dating *Menzes* and *Aas*, that
6  held where the contract is one for services, the contract gives
7  rise to an implied duty of care which requires that such services
8  be performed in a reasonable manner, and that a negligent failure
9  to do so may be both a breach of contract and a tort.  The
10  *Menezes* court noted that this statement was true, but
11  unequivocally qualified that, "conduct amounting to a breach of
12  contract becomes tortious *only when it also violates a duty*
13  *independent of the contract arising from principles of tort law.*"
14  *Menezes*, 21 Cal. 4th at 551 (citing *Applied Equip. Corp. v.*
15  *Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 515 (1994).  The
16  contract was one for services, a competent performance of such
17  services was a contractual duty.

18      Here, Britz does not allege that Defendants had a duty to
19  defend independent of the May 14, 2003, letter whereby Defendants
20  undertook to provide Britz a defense in the Skouti Lawsuit.
21  Britz's negligence allegations that Defendants undertook a duty
22  to exercise reasonable care in managing Britz's defense and
23  should have informed Britz of Rushford's communications with
24  Moore and Ferguson that Hoppe was inadequately representing
25  Britz, premised on the May 14, 2003, letter by which Defendants
26  undertook Britz's defense, was an integral part of and not
27  independent of Bayer's defense obligation.

28      Britz admits that Defendants agreed to defend Britz in the

19

Skouti Lawsuit because of their prior business relationship.  It is this prior business relationship that resulted in the Defendants' offer to defend Britz in the Skouti Lawsuit, not an independent duty arising under tort law.  Defendants' failure to inform Britz of Rushford's conclusion that Hoppe was not providing Britz with an adequate defense in the Skouti Lawsuit is part of defense counsel's duty to keep a client informed when representing a client as part of a defense tender and does not implicate any social policy that merits the imposition of tort remedies.

Britz contends that Defendants' argument that a party may not recover in tort for breach of a contractual obligation ignores well-established case law.  In support of this position, Britz cites the venerable California Supreme Court decision in *Eads v. Marks*, 39 Cal. 2d 807 (1952) for the proposition that "the same act may be both a tort and breach of contract."

In *Eads*, a father had entered into an agreement with a dairy for the delivery of milk, cream, butter, and eggs to his residence.  *Eads*, 39 Cal. 2d at 809.  About a year after entering into the delivery agreement, the parents of the plaintiff, a one-year old child, informed the dairy that it should not leave glass containers, among other things, at the residence other than in the refrigerator.  *Id.*  The plaintiff's parents informed the dairy that the child might become injured by picking up, dropping, or tripping over the dairy products or glass containers.  *Id.*  About nine months later, the dairy left a glass milk container on the back porch of the residence.  *Id.*  The child picked up the glass container and fell off the porch

1  causing the container to break near his face.  *Id.*  The child

2  sustained severe injuries in the fall.  *Id.*

3      Plaintiffs sued the dairy for negligence.  In the complaint,

4  the plaintiffs alleged they made an agreement with the dairy

5  regarding the place of delivered dairy products and, implicit in

6  the agreement, is the allegation that it was made expressly for

7  the benefit of their minor child, a third-party beneficiary.

8  *Eads*, 39 Cal. 2d at 810.  Defendants demurred on the ground that

9  the complaint was uncertain because it alleged no facts showing

10 any duty was owed to the child.  *Id.*  The trial court sustained

11 the demurrer without leave to amend.

12      On appeal, the court reversed holding that the same act may

13 be both a tort and a breach of contract.  *Id.*  The court reasoned

14 "[e]ven where there is a contractual relationship, between the

15 parties, a cause of action in tort may sometimes arise out of the

16 negligent manner in which the contractual duty is performed, or

17 out of a failure to perform such duty."  *Id.*  According to *Eads*,

18 the duty of care arose by reason of the contract.  *Id.* at 811.

19 "The contract is of significance only in creating the legal duty,

20 and the negligence of the defendant should not be considered as a

21 breach of contract, but as a tort governed by the rule of torts."

22 *Id.*

23      Britz's reliance on *Eads* is misplaced.  *Eads* has been

24 refuted by later California case law that establishes the

25 independent duty requirement.  In *Eads*, although the agreement to

26 deliver dairy products, with all deliveries to be placed in the

27 refrigerator, was between the injured child's parents and the

28 dairy, the duty underlying the negligence cause of action was to

1   the injured child, who was not a party to the contract.

2   Characterizing the independent duty of care in *Eads* as applying

3   to the child is consistent with *Menezes* and *Aas*.  Here, by

4   contrast, Britz maintains the Defendants owed it a duty of care

5   arising out of the May 14, 2003, letter.  In *Eads*, it was the

6   injured young child who was a not a party to the agreement for

7   the delivery of dairy products to whom a duty was owed, in

8   contrast to the case at hand where Britz, a party to the May 14,

9   2003, letter, was injured by a breach of the very duty of defense

10  the contract provides.

11      Britz contends Defendants' agreement to defend it in the

12  Skouti Lawsuit created a "special relationship" that is analogous

13  to the relationship shared between an insurer and an insured.

14  This special relationship, according to Britz, creates a duty of

15  care independent of the contract and arising from principles of

16  tort law.  Defendants rejoin no "special relationship" existed

17  between the parties.  Instead, Defendants suggest that the May

18  14, 2003, letter was simply an offer to pay Britz's attorney's

19  fees associated with its defense in the Skouti Lawsuit to keep a

20  commercial customer happy.  Defendants also assert Britz's

21  interpretation of the May 14, 2003, letter implies that

22  Defendants agreed to assume control over the litigation in the

23  Skouti Lawsuit.  Defendants deny any insurance contract-type duty

24  of defense by their undertaking to provide counsel.  The facts

25  allege that Britz was an agricultural chemical dealer to whom

26  Bayer was a commercial product supplier.  There is no "special"

27  insurance-like relationship in the providing of a defense to a

28  customer and to defend the manufacturer-seller's product.

1    "Every contract imposes upon each party a duty of good faith

2    and fair dealing in its performance and enforcement." *Foley v.*

3    *Interactive Data Corp.*, 47 Cal. 3d 654, 683 (1988).  The

4    covenant, however, is a contract term and "compensation for its

5    breach has almost always been limited to contract rather than

6    tort remedies."  *Id.* at 684.  "As to the scope of the covenant,

7    the precise nature and extent of the duty imposed by such an

8    implied promise will depend on the contractual purposes."  *Id.*

9    (alterations in original omitted).  "As a contract concept,

10   breach of the duty led to imposition of contract damages

11   determined by the nature of the breach and standard contract

12   principles."  *Id.*

13   An exception to this general rule exists in the context of

14   insurance contracts, "where, for a variety of reasons, courts

15   have held that breach of the implied covenant will provide the

16   basis for an action in tort."  *Foley*, 47 Cal. 3d at 684.  In the

17   insurance context

18        the duty to comport with the implied covenant of good
         faith and fair dealing is immanent in the contract
19        whether the company is attending on the insured's behalf
         to the claims of third persons against the insured or the
20        claims of the insured itself.  Accordingly, when the
         insurer unreasonably and in bad faith withholds payment
21        of the claim of its insured, it is subject to liability
         in tort.
22

23   *Id.* (alterations in original omitted).

24   Tort recovery is permitted in the insurance context because

25   of circumstances that do not exist in typical commercial

26   contracts.  An insured in an insurance contract "does not seek to

27   obtain a commercial advantage by purchasing the policy – rather,

28   he seeks protection against the calamity."  *Id.* (citing *Egan v.*

23

1  *Mutual of Omaha Ins. Co.*, 24 Cal. 3d. 809, 819 (1979)).  "The

2  insurers' obligations are rooted in their status as purveyors of

3  a vital service labeled quasi-public in nature." *Foley*, 47 Cal.

4  3d at 684-85 (alterations in original omitted).  "Suppliers of

5  services affected with a public interest must take the public's

6  interest seriously, where necessary placing it before their

7  interests in maximizing gains and limiting disbursements." *Id.*

8  at 685.  "As a supplier of a public service rather than a

9  manufactured product, the obligations of insurers go beyond

10  meeting reasonable expectations of coverage." *Id.*  Additionally,

11  "the relationship of insurer and insured is inherently

12  unbalanced: the adhesive nature of insurance contracts places the

13  insurer in a superior bargaining position." *Id.*

14       Britz and the Defendants do not share the "special

15  relationship" that exists between an insured and insurer.  The

16  relationship between Britz and Defendants is a commercial one,

17  that of a purchaser and seller in the commercial context of

18  agricultural chemical sales.  Defendants' offer to defend Britz

19  in the Skouti Lawsuit arises out of their commercial

20  relationship, and the May 14, 2003, letter specifically indicates

21  Defendants would defend Britz "because of Bayer's relationship

22  with Britz."  Britz has not cited any cases extending the

23  "special relationship" status to commercial dealings between

24  parties outside of the insurance context.  Defendants are in the

25  business of manufacturing and selling agricultural chemical

26  products.  Defendants do not provide a catastrophe avoidance

27  service to the public or peace of mind to customers in the way an

28  insurance company does.  Defendants do not hold a superior

**24**

1  bargaining position over Britz, and there is nothing adhesive

2  about Defendants' May 14, 2003, letter voluntarily offering to

3  defend Britz in the Skouti Lawsuit.  Defendants sought to keep a

4  good customer happy, not to become its insurer.  There is no

5  valid reason to extend the "special relationship" status to Britz

6  and Defendants.

7       The motion to dismiss the negligent breach of contract claim

8  is GRANTED WITHOUT LEAVE TO AMEND.

9       Defendants contend Britz's gross negligence cause of action

10 fails to state a claim because it is merely an allegation of

11 punitive damages by stating Defendants

12

13       failed to act with any modicum of diligence or care, and
         Defendants actions constituted a wanton and reckless
         disregard of its obligations to Britz and as a voluntary
14       and conscious disregard for Britz's rights and any
         consequences which were a foreseeable result of
15       Defendant's action or inaction, thereby justifying an
         award of exemplary and punitive damages.  Defendant's
16       conduct was despicable by any standard.

17      Britz rejoins that the language above sufficiently pleads a

18 cause of action for gross neglience.  California tort law

19 recognizes the difference between negligence and gross

20 negligence.  *Santa Barbara v. Superior Court*, 41 Cal. 4th 747

21 (2007).  Gross negligence has long been defined as either "the

22 want of even scant care or an extreme departure from the ordinary

23 standard of conduct."  *Id.* at 754.  "A breach of legal duty may,

24 of course, consist of either ordinary negligence or gross

25 negligence."  *Van Meter v. Bent Constr. Co.*, 46 Cal. 2d 588, 595.

26 Whether a party acted with gross negligence is a question of

27 fact.  *Cooper v. Kellogg*, 2 Cal. 2d 504, 511 (1935) (stating

28 "whether there has been such a lack of care as to constitute

25

1  gross negligence is a question of fact for the determination of

2  the trial court or jury, even where there is no conflict in the

3  evidence if different conclusions upon the subject can rationally

4  be drawn therefrom.").

5      Here, Britz has pleaded a cause of action for gross

6  neglience, albeit marginally, to survive a motion to dismiss.

7  Britz has alleged that Defendants did not act with any modicum of

8  diligence and disregarded its obligations while defending Britz

9  in the Skouti Lawsuit.  The FAC also incorporates by reference

10  all of the facts surrounding Defendants' offer to defend Britz,

11  pay Hoppe's attorney's fees, and provide Rushford as counsel.

12  Gross negligence is another species, an exacerbated form of

13  negligence.  Like negligence, gross negligence still requires an

14  independent duty not arising from contract.  Defendants owed no

15  duty of care to Britz independent of that it assumed under the

16  contract.  Britz cannot state a claim for gross negligence in

17  tort.

18      The motion to dismiss the gross negligence claim is GRANTED

19  WITHOUT LEAVE TO AMEND.

20

21          B.   Whether Britz's FAC States a Claim for Relief for
                 Breach of Contract.

22

23      Defendants contend the FAC fails to state a claim for relief

24  for breach of contract.  The FAC alleges the May 14, 2003, letter

25  contains a necessary and implied condition that the Defendants

26  would "adequately" defend Britz in the Skouti Lawsuit.  The FAC

27  also alleges Defendants failed to take adequate measures to

28  ensure Britz received an adequate defense, and Defendants failed

1   to inform Britz of facts or circumstances indicating it was not

2   receiving an adequate defense.  These allegations, according to

3   Defendants, are insufficient to state a claim for breach of

4   contract.

5       Britz contends that the May 14, 2003, letter constituted an

6   express agreement that Defendants would defend Britz in the

7   Skouti lawsuit.  Incidental and necessary to Defendants'

8   agreement to Defend Britz is an implied condition to do so in a

9   reasonable  manner.  Britz maintains this condition is so obvious

10   and incidental to the agreement, "there was no reason to state

11   the covenant at the time the agreement was entered into."

12       California recognizes "an implied covenant of good faith and

13   fair dealing in every contract . . . ."  *Kransco v. American*

14   *Empire Surplus Lines Ins. Co.*, 23 Cal. 4th 390, 400 (2000).

15   "Broadly stated, that covenant requires neither party do anything

16   which will deprive the other of the benefits of the agreement.

17   *Belcher Oil Co.*, 11 Cal. 4th at 91.  The covenant imposes a duty

18   on each party to do that which is necessary to accomplish the

19   purpose of the contract.  *Andrews v. Mobil Aire Estates*, 125 Cal.

20   App. 4th 578, 589 (2005).  "To effectuate the intent of the

21   parties, implied covenants will be found if after examining the

22   contract as a whole it is so obvious that the parties had no

23   reason to state the covenant, the implication arises from the

24   language of the agreement, and there is a legal necessity."  *Ben-*

25   *Zivi v. Edmar Co.*, 40 Cal. App. 4th 468, 473 (1995).  While

26   courts have implied covenants in a contract, "such covenants are

27   justified only when they are not inconsistent with some express

28   term of the contract and, in the absence of such implied terms,

the contract could not be effectively performed." *Tanner v.
Title Ins. & Trust Co.*, 20 Cal. 2d 814, 824 (1942).  "Implied
terms should never be read to vary express terms." *Carma
Developer v. Marathon Dev.*, 2 Cal. 4th 342, 374 (1992).

        The parties do not dispute that a defense agreement exists.
The controlling terms of the agreement are found in the May 14,
2003, letter from Defendants' outside counsel to Hoppe.  The May
14, 2003, letter contains the following contractual terms:

> (1)  Bayer agrees to defend Britz Fertilizers, Inc. <u>at this
>      time</u>.
>
> (2)  Bayer will <u>not pay past attorney's fees or costs</u> in
>      this case.
>
> (3)  Bayer will retain Jim Rushford of Rushford & Bonotto in
>      Sacramento, to defend this matter <u>with you</u>.
>
> (4)  If <u>there is any evidence</u> in this case of <u>negligence or
>      fault on the part of Britz</u> (whether credible or not),
>      <u>Bayer may at its option</u> withdraw from the defense of
>      this case.
>
> (5)  In the event that Bayer withdraws from the case, Britz
>      agrees to waive any conflict and allow attorneys
>      retained by Bayer in this manner to continue to
>      represent Bayer if Bayer is included as a party.
>
> (6)  Britz agrees that it will cooperate fully with Bayer in
>      connection with the defense of this case.
>
> (7)  Both Bayer and Britz <u>reserve the issue of indemnity</u>
>      until a later date.

(Emphasis added).

        The agreement specifically states Bayer will defend Britz
"at this time" and will retain Rushford to do so in the Skouti
Lawsuit.  The parties do not dispute that Defendants paid Hoppe's
fees and that Rushford represented Britz for approximately
seventeen months and then withdrew from representation several
months before the Skouti Lawsuit went to trial.  The record does

1  not show why Rushford withdrew from its representation of Britz.

2  Term four, above, expressly reserves the right to withdraw from

3  the defense of this case in the event of any negligence by Britz.

4  There is no provision that Bayer was further obligated to provide

5  a defense or counsel to Britz.  Defendants' failure to provide

6  replacement counsel for Britz after Rushford withdrew may or may

7  not have breached terms number one and three in view of the

8  temporal limitation "at this time," which introduces material

9  ambiguity into the extent and length of the defense commitment.

10       There is no allegation of any representation by express

11  language in the May 14, 2003, letter that Defendants had an

12  obligation to "adequately" defend Britz.  Contract terms one and

13  three, above, simply require Defendants to defend Britz "at this

14  time" and to provide Rushford to do so.  Defendants are sellers

15  of agricultural products.  Defendants could only provide a

16  defense to Britz by providing and paying counsel.  The payment of

17  Hoppe's fees (term two) and providing Rushford to assist with

18  Britz's defense (term three) explained how Defendants would

19  defend Britz.  Britz's allegation that Defendants didn't do

20  "enough" to defend Britz is colorably sufficient at the pleading

21  stage to withstand a motion to dismiss the contract claim that

22  Defendants breached their obligation to defend Britz, in view of

23  the manifest ambiguity of the defense agreement.

24       The motion to dismiss the contract claim is DENIED.

25

26       C.    Whether *Britz II* is Duplicative of *Britz I*.

27       Defendants contend *Britz II* should be dismissed because it

28  is duplicative of *Britz I*.  Defendants maintain that Britz has

1  sought to litigate claims arising from a common nucleus of
2  operative fact in two separate cases.  According to Defendants,
3  both *Britz I* and *Britz II* arise from an alleged breach of certain
4  obligations related to the Skouti Lawsuit.  Both cases concern
5  the Defendants' alleged defense and indemnity obligations
6  emanating from the Skouti Lawsuit, and by filing *Britz II*, Britz
7  has in effect "split its claims."

8      Britz contends the claims asserted in the FAC are not
9  duplicative of the claims asserted in the *Britz I* complaint.
10  Britz maintains Defendants fail to understand the key
11  distinctions between the two cases, and that *Britz I* and *Britz II*
12  are based on different duties, which arise from separate
13  agreements, and are based on different "factual nuclei."
14  According to Britz, *Britz I* is based on Defendants' contractual
15  duty to indemnify Britz under an indemnification provision in the
16  Distribution Agreement.  In *Britz II*, however, Britz claims
17  Defendants undertook an express separate duty to defend Britz in
18  the Skouti Lawsuit, and this duty arose out of Moore's May 14,
19  2003, letter.

20      In a recent opinion, the Ninth Circuit succinctly described
21  the analytical framework to determine whether a later-filed
22  complaint should be dismissed as duplicative of an earlier-filed
23  complaint.  *Adams v. California Dep't of Health Servs.*, 487 F.3d
24  684 (9th Cir. 2007).  "Plaintiffs generally have no right to
25  maintain two separate actions involving the same subject matter
26  at the same time in the same court and against the same
27  defendant."  *Id.* (citing *Walton v. Eaton Corp.*, 563 F.2d 66, 70
28  (3d Cir. 1977) (en banc)).  The test for claim preclusion is used

to determine whether a suit is duplicative. *Adams*, 487 F.3d at 688.  The Supreme Court has stated "the true test of the sufficiency of a plea of other suit pending in another forum [i]s the legal efficacy of the first suit, when finally disposed of, as the thing adjudged, regarding the matters at issue in the second suit." *Id.* at 689 (citing *United States v. The Haytian Republic*, 154 U.S. 118, 124 (1894)).  "In the claim-splitting context, the appropriate inquiry is whether, assuming that the first suit were already final, the second suit could be precluded pursuant to claim preclusion."  *Adams*, 487 F.3d at 689.  "The normal claim preclusion analysis applies and the court must assess whether the second suit raises issues that should have been brought in the first."  *Id.*

In assessing whether the second action is duplicative of the first, a court "examine[s] whether the causes of action and relief sought, as well as the parties or privies to the action, are the same.  *Adams*, 487 F.3d at 689.  "There must be the same parties, or, at least, such as represent the same interests; there must be the same rights asserted and the same relief prayed for; the relief must be founded upon the same facts, and the . . . essential basis, of the relief sought must be the same."  *Id.* (citing *The Haytian Republic*, 154 U.S. at 124).  "A suit is duplicative if the claims, parties, and available relief do not significantly differ between the two actions."  *Adams*, 487 F.3d at 689 (citing *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993)).

The Ninth Circuit uses a "transaction test" developed in the context of claim preclusion to ascertain whether successive

causes of action are the same.  *Adams*, 487 F.3d at 689.  "Whether

two events are part of the same transaction or series depends on

whether they are related to the same set of facts and whether

they could conveniently be tried together."  *Id.*  The following

four criteria are examined when applying the transaction test:

> (1) Whether rights or interests established in the prior judgment would be destroyed or impaired by the prosecution of the second action;

> (2) Whether substantially the same evidence is presented in the two actions;

> (3) Whether the two suits involve infringement of the same right; and

> (4) Whether the two suits arise out of the same transactional nucleus of facts.

*Id.*  The last of these criteria is the most important.  *Id.*

(citing *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1202

(9th Cir. 1982)).

*Britz II* is entirely duplicative of *Britz I*.  It simply adds

an additional claim for a more particularized duty to defend.

The parties are identical in both Britz *I* and *Britz II*.  The

relief sought in both Britz *I* and *Britz II* is almost identical.

Britz seeks damages in both cases to indemnify it for the

$7,596,247 judgment entered against Britz in the Skouti Lawsuit

and any defense costs.  *Britz I* seeks indemnification for the

judgment against it in the Skouti Lawsuit plus punitive damages

for its fraud and false promise claims for relief.  Britz seeks

$10,000,000.00 in damages in *Britz II* for Defendants' negligence

and breach of contract in failing to adequately defend Britz in

the Skouti Lawsuit.  In both cases, Britz is seeking damages to

cover the judgment in the Skouti Lawsuit.

1    A review of the complaint in *Britz I* and the FAC in *Britz II*

2    reveals numerous allegations of identical facts.  Both the

3    complaint and FAC describe Britz's sale of Defendants' chemical

4    Ethrel to Skouti, the damages to Skouti's vineyards, the Skouti

5    Lawsuit where judgment was entered against Britz for $7,596,247

6    for harm to those vineyards, Ferguson's communications that it

7    was Bayer's position that it would defend and indemnify any claim

8    related to its products where Britz acted as a pass-through

9    entity.  Britz's fraud cause of action in *Britz I* alleges

10   Ferguson's representation that Defendants would indemnify Britz

11   was false, and Britz relied on Ferguson's representation that

12   Defendants would defend and indemnify Britz.  The fraud cause of

13   action also alleges Britz would refrain from filing a cross-

14   complaint in the Skouti Lawsuit against Britz.  *Britz II* alleges

15   Britz dismissed a cross-complaint against Defendants after

16   Defendants agreed to defend Britz in the Skouti Lawsuit.  *Britz I*

17   alleges Britz is continuing to incur attorney's fees following

18   judgment in the Skouti Lawsuit.  Under the agreement to defend

19   Britz, which is at issue in *Britz II*, Defendants paid Hoppe's

20   attorney's fees; attorney's fees post-judgment in the Skouti

21   Lawsuit are claimed in *Britz I.*

22   These complaints should be consolidated for all purposes

23   including trial or Britz should be required to plead any

24   supplemental or additional claims for relief and damages in its

25   original complaint.  One trial embracing all of Britz's claims

26   against Defendants for the defense of and any indemnity

27   obligations in the Skouti Lawsuit will serve the interests of

28   justice, promote judicial economy, preserve party and judicial

33

resources, and prevent unjustified duplication of evidence and

potentially inconsistent results in the second lawsuit concerning

the same underlying transactions.  To that end, *Britz II* is

consolidated with *Britz I*.  *See Adams*, 487 F.3d at 692

(explaining that a district court may dispense with a duplicative

complaint by dismissing the later-filed complaint with or without

prejudice, by staying or enjoining the later-filed proceeding, or

by consolidating the two actions).  Britz shall amend the

original complaint to succinctly state all surviving claims and

remedies sought.

### VI.  Conclusion.

For the foregoing reasons, Defendants' motion to dismiss is

GRANTED in part and DENIED in part as set forth below.

(1)  Defendants' motion to dismiss as to Britz's neglience

claim is GRANTED WITHOUT LEAVE TO AMEND.

(2)  Defendants' motion to dismiss as to Britz's gross

neglience claim is GRANTED WITHOUT LEAVE TO AMEND.

(3)  Defendants' motion to dismiss Britz's breach of

contract claim is DENIED.

(4)  Defendants' motion to dismiss as to whether *Britz II* is

duplicative of *Britz I* is GRANTED.  Case number

1:07-cv-00846-OWW-SMS (*Britz II*) is consolidated for

all purposes with *Britz I*.  The complaint shall be

restated to allege the surviving claims within twenty

(20) days following service of this decision.

Defendants shall have fifteen (15) days to answer, if

any further response is required to the consolidated

1    complaint.

2    (5)   Case number 1:07-cv-00846-OWW-SMS (*Britz II*) shall be

3          administratively closed and all pleadings shall

4          hereafter be filed in case number 1:06-cv-00287-OWW-SMS

5          (*Britz I*).

6    Defendants shall file an order consistent with this

7  memorandum decision within five (5) days following service by the

8  clerk of this decision.

9  IT IS SO ORDERED.

10  Dated:   **February 5, 2008**          _____**/s/ Oliver W. Wanger**_____
                                              **UNITED STATES DISTRICT JUDGE**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28